















```
BJR     6/27/02    13:24
3:99-CV-00843    JOSEPHS V. PACIFIC BELL
*112*
*O.*
```

FILED
02 JUN 27 PM 12:09
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: B Reed
DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA LIAM JOSEPHS,<br><br>  Plaintiff,<br>vs.<br>PACIFIC BELL; and DOES 1-30, inclusive,<br><br>  Defendants. | CASE NO. 99cv0843 BTM (AJB)<br><br>**ORDER RE: MOTIONS IN LIMINE** |

During the December 5, 2001 motions in limine hearing, the Court requested additional briefing on the following issues: (1) whether the denial of plaintiff's claim for unemployment benefits, affirmed by the state Superior Court and Court of Appeal, finding that he was discharged for misconduct, effects collateral estoppel; (2) whether the decision to deny reinstatement based on discriminatory intent is actionable under the ADA; (3) whether statements made in grievance proceedings are admissible (defendant's motion in limine two of seven [53-1]) and (4) plaintiff's motion in limine regarding PacBell's "Kaleidoscope of Difference" videotape [94-1].

The Court held oral argument on February 5, 2002. On the record, the Court granted plaintiff's motion to exclude the videotape [94-1]. For the reasons set forth on the record and articulated in <u>Pichon v. Pacific Gas and Electric Co.</u>, 212 Cal.App.3d 488 (1989), plaintiff's state court-reviewed unemployment decision has no collateral estoppel effect on this action. The remaining issues relate to the grievance

proceedings following plaintiff's termination.

## I. BACKGROUND

As the parties are familiar with the facts of this case, the following factual background is included as it relates to the grievance proceedings.

Plaintiff was terminated by defendant on April 23, 1998. Pursuant to plaintiff's collective bargaining agreement, plaintiff has the right to challenge his discharge in grievance proceedings. According to PacBell, the purpose and intent of the grievance process is to have the parties formally meet to discuss whether the dispute can be settled before arbitration or other form of action takes place. (Decl. of Karin Felts, ¶ 3.) Pursuant to the Court's request, PacBell lodged a copy of the collective bargaining agreement with the Court on February 12, 2002. Article 7 of the agreement governs the grievance procedure.

Plaintiff elected to pursue reinstatement through his union representative. However, his attempts at reinstatement through the grievance procedures were unsuccessful. Plaintiff's grievance at Step I was denied on June 9, 1998. Plaintiff's grievance at Step II was denied on July 28, 1998. Finally, plaintiff's grievance at Step III was denied November 20, 1998. At each step, the "company position and/or offer for settlement" stated that PacBell would not reinstate plaintiff because he attempted to withhold information concerning his past conviction for misdemeanor battery. (Decl. of Karin Felts, Grievance Report, Exh. 1.)

Plaintiff filed a claim with the Equal Employment Opportunity Commission on November 30, 1998 and received a right to sue letter. Plaintiff filed a claim with the Department of Fair Employment and Housing on April 22, 1999 and received a right to sue letter. On April 23, 1999, plaintiff filed this action.

Plaintiff's Second Amended Complaint ("SAC") alleges that defendant discriminated against him in violation of the American with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"). In his eighth cause of action for violation of the ADA, plaintiff alleges that "On or about April 23, 1998, Defendant intentionally discriminated

against Plaintiff because of Plaintiff's disability, in that Defendant terminated Plaintiff because of his disability." (SAC, ¶ 69).[1] Plaintiff also incorporates his general allegations, one of which mentions the reinstatement proceedings of another employee who was reinstated even though he had failed to report two misdemeanor convictions on his employment application. (SAC, ¶ 31). Plaintiff's Second Amended Complaint does not mention the grievance proceedings relating to his own termination.

Plaintiff contends that defendant violated the ADA since he was terminated as a result of his perceived disability. Defendant contends that plaintiff was terminated because he lied about his misdemeanor conviction on his employment application. Plaintiff seeks to prove at trial that defendant's proffered justification was pretextual. Plaintiff seeks to introduce evidence of two other PacBell employees who were reinstated after they were terminated on the grounds that they lied on their employment applications. In addition, plaintiff seeks to introduce evidence of statements made in the context of the grievance proceedings in his case. Specifically, Jeff Smith, who approved the final decision to terminate plaintiff made a comment in the Step II grievance proceeding about plaintiff being a potential liability. PacBell seeks to exclude this statement.

## II. DISCUSSION

PacBell makes two arguments with respect to plaintiff's grievance proceedings. First, PacBell argues that plaintiff does not have evidence to support his claim that the denial of his grievance was discriminatory under the ADA. Secondly, PacBell seeks to exclude Mr. Smith's statement pursuant to Federal Rule of Evidence 408.

---

[1] Under the ADA, the term "disability" means (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2). In its order dated November 2, 2000, the Court rejected plaintiff's argument that he had "a record" of a disability but denied summary judgment on the basis that plaintiff could prove he was "regarded as" having a disability.

A. **Failure to Reinstate**

At oral argument, plaintiff argued that he states two causes of action under the ADA: (1) the April 23, 1998 termination decision, for which the failure to reinstate him is relevant evidence that defendant's stated reason was pretextual; and (2) defendant's failure to reinstate him in the grievance process.

PacBell concedes that failure to reinstate may state a claim under the ADA but argues that plaintiff has not produced sufficient evidence to survive a motion for summary judgment.[2] The court disagrees. Plaintiff has submitted sufficient evidence of statements made by PacBell employees, both before Josephs' termination and during the grievance process, to defeat PacBell's motion for summary judgment. See Order Denying Defendant's Motion for Summary Judgment, November 8, 2001. Moreover, as discussed below, statements made during the grievance proceeding are admissible pursuant to Federal Rule of Evidence 408.

PacBell argues that plaintiff's ADA claim is a "moving target" since his Second Amended Complaint ("SAC") alleges wrongful "termination" on April 23, 1998, but makes no mention of discriminatory failure to reinstate. Assuming Josephs wishes to proceed on both claims, PacBell argues that he cannot state a prima facie case of discrimination on the termination claim since *all* employees who were found to have falsified their employment applications were terminated. Plaintiff disputes this fact, but has offered only inadmissible statements that lack personal knowledge by plaintiff's union representative to contest PacBell's termination policy.

Nevertheless, the court finds that plaintiff has stated a prima facie case of discriminatory termination because his termination claim is inextricably linked to his

---

[2] See EEOC v. Hall's Motor Transit, 789 F.2d 1011 (3d Cir. 1986) (EEOC produced sufficient evidence to support a claim of discriminatory failure to reinstate where the black employee's prior accident was minor compared with that of the white employees and the EEOC introduced considerable evidence regarding the employer's reputation for being biased). PacBell's attempt to distinguish Hall's Motor from Josephs' grievance proceedings is unavailing. Josephs has produced evidence that some employees who lied on their employment applications were reinstated, as well as evidence of statements indicating that PacBell employees perceived Josephs as having a mental disability.

reinstatement claim. Indeed, the Ninth Circuit addressed the cause of action for wrongful termination in violation of Title VII of the Civil Rights Act where the plaintiff elected to pursue reinstatement in <u>Collins v. United Airlines, Inc.</u>, 514 F.2d 594 (9th Cir. 1975). The Ninth Circuit explained that "a discharged employee who seeks to be reinstated is really litigating the unfairness of his original discharge because only if the original discharge was discriminatory is he entitled to be reinstated as if he had never ceased working for the employer." <u>Collins</u>, 514 F.2d at 596 (quoting <u>NLRB v. Textile Machine Works</u>, 214 F.2d 929, 932 (3d Cir. 1954)). The <u>Collins</u> court thus applied the 90-day statute of limitations period for a Title VII action from the date of Collins' termination, not from the date of her reinstatement hearing. Because plaintiff can state a prima facie case and has produce sufficient evidence of pretext with respect to his discriminatory failure to reinstate claim, he also survives summary judgment on his termination claim.

Plaintiff's EEOC claim alleging discriminatory termination on April 23, 1998 encompasses his failure to reinstate claim. See <u>Couveau v. American Airlines, Inc.</u>, 218 F.3d 1078, 1082 (9th Cir. 2000). Although <u>Couveau</u> involved a FEHA claim, the Ninth Circuit applied Title VII law in reaching its result and explained that "[b]ecause California law under the FEHA mirrors federal law under Title VII, federal cases are instructive." <u>Id.</u> at 1082, n. 4.

The court agrees with PacBell that plaintiff's ADA claims need clarification. Therefore, plaintiff shall file a Third Amended Complaint, alleging a failure to reinstate.

B.  **<u>Motion in Limine re: Grievance Proceedings</u>**

Plaintiff seeks to present evidence at trial that two other PacBell employees who had lied on their employment applications were reinstated. Plaintiff seeks to present this evidence to prove that PacBell acted with discriminatory intent in terminating him on April 23, 1998. Such evidence is admissible because it is relevant to proving that PacBell's stated reason for terminating him was pretextual and

is not excluded by any rule of evidence.

Plaintiff also seeks to introduce a statement by Mr. Smith made in the course of the grievance proceedings that plaintiff was a potential liability to PacBell. PacBell argues that the statement is inadmissible pursuant to Fed. R. Evid. 408.

Rule 408 provides in its entirety:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

PacBell argues that the statements made by Mr. Smith are inadmissible because they are evidence of "conduct or statements made in the course of compromise negotiations" and would be introduced to prove liability for the underlying claim challenging his dismissal.

Plaintiff makes two arguments why statements made by Mr. Smith are not excluded by the rule. First, plaintiff argues that Rule 408 does not preclude the admissibility of statements where the offer to reinstate was unconditional. Thomas v. Resort Health Related Facility, 539 F.Supp. 630, 637-38 (E.D.N.Y. 1982). Here, this exception is inapplicable because PacBell did not make any offer, conditional or unconditional, of reinstatement.

Next, plaintiff contends that Rule 408 only precludes the use of compromise evidence to prove the validity or invalidity of the claim that was the subject of the compromise. In this case, the subject of the grievance proceedings was whether plaintiff should be discharged for making false statements on his employment application, not whether PacBell discriminated against him in violation of the ADA.

The Court has reviewed Article 7 of the collective bargaining agreement lodged with the court, PacBell's Grievance Report (Decl. Karin Felts, Exh. 1), and the

handwritten notes of Linda Sexton, plaintiff's union representative during the Step II grievance (Decl. R. Keramati, Exh. 15). The Court agrees with plaintiff that Rule 408 does not exclude evidence of the statements made during the grievance proceedings because the grievance did not discuss settlement but, rather, was part of the termination process.

Although the literal language of Rule 408 broadly declares that "[e]vidence of conduct or statements made in compromise negotiations is likewise not admissible," courts have held that Rule 408 is inapplicable when the claim is based upon some wrong that was committed in the course of the settlement discussions; e.g., libel, assault, breach of contract, unfair labor practice, and the like. 23 Wright & Graham, Federal Practice and Procedure § 5314 at 282. Rule 408 does not prevent the plaintiff from proving his case; wrongful acts are not shielded because they took place during compromise negotiations. Id. The inapplicability of Rule 408 to suits seeking to vindicate wrongs committed during settlement discussions derives from the more general principle that "Rule 408 only bars the use of compromise evidence to prove the validity or invalidity of the claim that was the subject of the compromise, not some other claim." Id. at n. 25. Evidence of the compromise of a claim different than the claim currently in dispute therefore is admissible unless "the compromise evidence require[s] an inference as to the offeror's belief concerning the validity or invalidity of the compromised claim." Id. § 5308 at 244.

Defendant recognizes that Rule 408 does not exclude some statements made in settlement negotiations, but argues that this exception is limited to statements that independently create an actionable claim. For example, Rule 408 does not exclude statements regarding threats made by the employer during a grievance proceeding that concerned the unrelated issue about assignment of work. See Uforma/Shelby Business Forms, Inc. v. NLRB, 111 F.3d 1284 (6th Cir. 1997). The court does not read Uforma as narrowly as defendants would like. In that case, the
//

union brought a grievance alleging that the collective bargaining agreement had been violated when Uforma assigned a non-union member to the assistant foreman position. During the grievance meeting, the company representative made a statement that the union alleged was a threat in violation the National Labor Relations Act. In the NLRA action, the Sixth Circuit held that the statement was not excluded by Rule 408 because the statement was not introduced "to prove the validity of the grievance which served as the subject of the negotiations. Similarly, the General Counsel did not need to prove that the grievance was in fact a meritorious one in order to succeed on its unfair labor practices claim." Uforma, 111 F.3d at 1294. The Uforma court did not limit its holding to statements which independently create a separate actionable claim. Instead, it relied on the difference in the types of claims which the union sought to prove. Furthermore, the Sixth Circuit expressed its doubts whether the language in Rule 408 regarding "compromise negotiations" applied to grievance meetings between company and union representatives since the meetings were between non-lawyers who were discussing the resolution of a grievance. Id. at 1294 n. 8.

This court has similar doubts about whether Josephs' grievance meetings were compromise negotiations. Upon termination by PacBell, Josephs had a right to bring a grievance pursuant to Article 7 of the collective bargaining agreement. The Grievance Report states that the nature of the grievance was for "unjust and/or wrongful termination." The handwritten notes of the Step II meeting indicate that the union sought reinstatement on the grounds that Josephs did not intentionally falsify his employment application, sufficient time has past since the incident and he has a clean record from his previous employment with Cox Communication. The company representative denied the grievance at each step and did not entertain an offer for settlement. Thus, there was no "compromise" or "settlement" involved in the proceedings, as PacBell did not waver from its termination decision.

Even if the court assumes that the grievance was a "settlement

proceeding," the purpose of the grievance was distinct from the instant ADA action. Rule 408 permits the introduction of evidence in such cases. For example, in <u>Carney v. American University</u>, 151 F.3d 1090 (D.C. Cir. 1998), the Court of Appeals held that settlement papers were admissible in plaintiff's retaliation case to show that plaintiff's employer committed a separate wrong by conditioning her benefits on the waiver of her rights. In a similar case involving the ADEA, the Ninth Circuit held that the district court did not violate Rule 408 when it admitted a "settlement agreement" that the company offered the plaintiff at his termination meeting. See <u>Cassino v. Reichold Chemicals</u>, 817 F.2d 1338 (9th Cir. 1987). The Ninth Circuit noted that Cassino had not yet asserted his ADEA claim and that Rule 408 does not come into play simply because one party calls its communication with the other party a "settlement offer." <u>Id.</u> at 1343.

      PacBell contends in its Response to Cases Cited at Status Conference by Plaintiff, that <u>Cassino</u> is distinguishable because the "settlement" evidence in that case was contemporaneous with the termination. Indeed, <u>Cassino</u> distinguished cases where the employee asserts *after* termination that he or she is the victim of illegal discrimination and the parties negotiate a settlement were the employee relinquishes the right to a judicial determination of her discrimination claim in return for valuable consideration. <u>Id.</u> at 1342. In those cases, Rule 408 precludes the introduction of evidence of settlement discussions to prove liability. Here, in contrast, Josephs is challenging the termination decision, which includes the failure to reinstate. <u>Collins</u>, 514 F.2d at 596. Although PacBell contends that the pre-grievance termination decision was "final," Josephs had the right to seek reinstatement in grievance proceedings. Therefore, the statements made by Mr. Smith in the grievance meeting were contemporaneous with the termination. Furthermore, like the plaintiff in <u>Cassino</u>, he had not yet alleged that his discharge was discriminatory.

      Here, the statements made by Mr. Smith during the grievance proceedings are being offered into evidence to demonstrate that PacBell regarded

Josephs as disabled, not whether he should have been discharged for lying on his employment application. Josephs had not yet filed his claim with the EEOC when he initiated the grievance process. Accordingly, as there was no discrimination claim "on the table," the court's admission of the evidence in this case would not chill open communication in grievance proceedings about the claim then at issue. Since the validity of Josephs' ADA claims was not the subject of the grievance proceedings, the statements are admissible under Rule 408.

### III. CONCLUSION

For all the reasons discussed above: plaintiff shall file a Third Amended Complaint that states an independent action under the ADA for denial of reinstatement by July 14, 2002; defendant's motion in limine to exclude statements made in grievance proceedings is DENIED [53-1]; and plaintiff's motion in limine regarding PacBell's "Kaleidoscope of Difference" videotape is GRANTED [94-1]. The parties may not file further motions without leave of the court. The defendant may file a general denial in lieu of a further amended answer.

The parties shall appear before the court on July 17, 2002 at 2:30 p.m. for a status conference to set the trial date.

**IT IS SO ORDERED.**

Dated: June 26, 2002

HONORABLE BARRY TED MOSKOWITZ
United States District Judge

CC: Magistrate Judge Battaglia
All counsel of record